IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RONALD STEELE (N-81650), | ) |
| Plaintiff, | ) |
| | ) Case No. 17 C 6630 |
| v. | ) |
| | ) |
| WEXFORD HEALTH SOURCES, INC., | ) Hon. Thomas M. Durkin |
| GHALIAH OBAISI, DON MILLS, and | ) Hon. Magistrate Judge Jeffrey Cole |
| RANDY PFISTER, | ) |
| Defendants. | ) |

**PLAINTIFF'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS BY DEFENDANT WEXFORD HEALTH SOURCES, INC. AND FOR SANCTIONS**

Plaintiff Ronald Steele ("Plaintiff" or "Mr. Steele"), by and through his appointed counsel, Tabet DiVito & Rothstein LLC, hereby files this Motion to Compel the Production of Documents by Defendant Wexford Health Sources, Inc. ("Wexford") and for Sanctions pursuant to Rules 30 and 37 of the Federal Rules of Civil Procedure, stating in support thereof as follows:

**BACKGROUND**

1.  Mr. Steele, an inmate at Stateville Correctional Center ("Stateville"), asserts a cause of action against Wexford under 42 U.S.C. § 1983 for its deliberate indifference to Mr. Steele's serious medical condition in violation of the Eighth Amendment to the United States Constitution. Mr. Steele claims that Wexford has a well-documented pattern, policy, and/or practice at Stateville pursuant to which inmates like Mr. Steele are "denied timely access to adequate medical care as a means of reducing costs spent on medical treatment for inmates as Stateville." (FAC [Dkt. #21] at ¶¶ 70-71.)

2.  In his third set of requests for production (Requests 54 and 55), Mr. Steele requested that Wexford produce meeting minutes, agendas, and other documents related to Wexford's

"Medical Advisory Committee" meetings. As Wexford's responses confirm (at least implicitly), the requested documents are directly relevant to Wexford's policies and procedures. Indeed, Dr. Neil Fisher, Wexford's Rule 30(b)(6) witness, expressly testified that Wexford's policies and procedures "all have to go through the approval of the medical advisory committee." (Fisher Dep. Tr. at 178:16-17, excerpts attached as Exhibit A; *see also id.* at 164:23-24 ("policies and procedures go through our medical advisory committee").)

3. Nevertheless, Wexford has refused to produce the documents responsive to Plaintiff's requests, of which there are at least 14, claiming the documents are protected by the Pennsylvania Peer Review Protection Act (63 P.S. Section 425), the Illinois Medical Studies Act (735 ILCS 5/8-2101), and "other States Peer Review Acts." (Defendant's First Amended Response to Plaintiff's Third Set of Requests for Production of Documents to Defendants, attached as Exhibit B, at ¶¶ 54, 55; Defendants' Privilege Log, attached as Exhibit C.)

4. Wexford's privilege objections are not well-taken, as federal courts in Illinois, including this Court, have repeatedly held. Quite simply, state statutory peer review privileges over medical committee review documents in federal prisoners' rights litigation, including § 1983 deliberate indifference claims, are not applicable to shield the requested documents from production because of the attendant burdens that would be imposed on Mr. Steele. Accordingly, the Court should order Wexford to produce documents responsive to Plaintiff's requests and, given Wexford's continued bad faith in the discovery process, award Mr. Steele the reasonable costs incurred in filing this motion, including his attorney's fees. (*See, e.g.,* Dkt. ##82, 84 (motion to compel depositions withdrawn after Wexford agreed to produce the requested individuals at the eleventh hour).)

## ARGUMENT

5.      Federal Rule of Civil Procedure 26(b)(1) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); *Johnson v. Dart*, 309 F. Supp. 3d 579, 580-81 (N.D. Ill. 2018) (internal quotations and citations omitted).

6.      In cases based upon a federal cause of action, the federal common law governs issues of privilege. *Johnson*, 309 F. Supp. 3d at 581. "Therefore, because this matter is based on a federal cause of action, the court must look to federal common law, interpreted in the light of reason and experience, to determine whether a privilege exists." *Id.* Wexford, as the party asserting the privilege, carries the burden of establishing the privilege. *Id.*

7.      Wexford purports to invoke Pennsylvania, Illinois, and unidentified "other" states' privileges, notwithstanding that Mr. Steele has filed a federal claim in federal court. The Seventh Circuit relies on two principles in determining whether to apply a state law privilege in a federal question case:

> First, because the evidentiary privileges operate to exclude relevant evidence and thereby block the judicial fact-finding function, they are not favored and, where recognized, must be narrowly construed. Second . . . it is important to take into account the particular factual circumstances of the case in which the issue arises . . . [by] weigh[ing] the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case.

*Id.* (quoting *Memorial Hosp. for McHenry County v. Shadur*, 664 F.2d 1058, 1061-62 (7th Cir. 1981)).

8.      With these principles in mind, federal courts "have declined to recognize a state evidentiary privilege when doing so would impose a substantial cost to federal substantive and procedural policy, particularly when a plaintiff would be precluded from pursuing his federal claims." *Dobbey v. Randle*, No. 10 C 3965, 2014 WL 1364428, at *2 (N.D. Ill. Apr. 7, 2014)

(citing *Univ. of Penn. v. EEOC*, 493 U.S. 182, 193, 202 (1990), *Shadur*, 664 F.2d at 1059, *United States v. Illinois*, 148 F.R.D. 587, 590-91 (N.D. Ill. 1993), and *Clemmer v. Office of Chief Judge*, 554 F. Supp. 2d 722, 726-27 (N.D. Ill. 2008)).

9. For that reason, courts in this district have expressly rejected defendants' attempts to assert state statutory peer review privileges over medical committee review documents in federal prisoners' rights litigation, including § 1983 deliberate indifference claims. *See, e.g.*, *id.* at *2 (rejecting defendant's argument that Wexford documents were privileged under the Illinois Medical Studies Act); *Johnson*, 309 F. Supp. 3d at 582 (rejecting argument that mortality review documents were privileged under the Illinois Medical Studies Act); *see also United States v. Illinois*, 148 F.R.D. at 588 ("It is true, as defendants argue, that other institution records will show what injury or event occurred at the health facility and what remedial steps, if any, were taken. But the very existence of quality assurance review committees, their evaluations, and their recommended action or inaction is important in deciding the ultimate issue in the case—whether the defendant was providing adequate medical care to residents.").

10. The rationale for rejecting Wexford's privilege assertions is compelling. As the court stated in *Johnson*, inmate medical care involves "unique considerations" that are not present outside the prison context: "Whereas in the ordinary hospital it may be that the first object of all involved in patient care is the welfare of the patient, in the prison context the safety and efficiency of the prison may operate as goals affecting the care offered." *Johnson*, 309 F. Supp. 3d at 582 (quoting *Jenkins v. DeKalb Cnty., Georgia*, 242 F.R.D. 652, 660 (N.D. Ga. 2007). Specifically, compared to peer review for civilian medical cases, peer review in the prison context "is likely to contain far more 'nonmedical' information such as whether and when jail officials notified medical officials of a particular problem, whether there was a reason for nonmedical officials to have

4

monitored a situation more closely, *and perhaps provide insight into jail customs or policies.*" *Id.* (emphasis added).

11. For Mr. Steele to prevail on his claim against Wexford, he must prove "that his injury was caused by a Wexford policy, custom, or practice of deliberate indifference to medical needs, or a series of bad acts together that raise the inference of such a policy." *Harper v. Wexford Health Sources, Inc.*, No. 14-CV-04879, 2016 WL 1056661, at *3 (N.D. Ill. Mar. 17, 2016). And, as set forth above, Wexford's own Rule 30(b)(6) witness expressly testified that all of Wexford's policies and procedures "have to go through the approval of the medical advisory committee." (Ex. A at 178:16-17; *see also id.* at 164:23-24 ("policies and procedures go through our medical advisory committee").)

12. The documents Mr. Steele seeks are directly relevant to his claim against Wexford, and they are exactly the type of documents courts in this district have found do not fall within the purview of states' medical peer review privileges. Accordingly, the Court should reject Wexford's privilege assertions and order that the responsive documents be produced. In addition, Mr. Steele should be awarded the reasonable expenses incurred in making this motion, including attorney's fees. Fed. R. Civ. P. 37(a)(5)(A).

13. Pursuant to Fed. R. Civ. P. 37(a)(1) and Local Rule 37.2, undersigned counsel for Mr. Steele certifies that we have in good faith conferred with counsel for Wexford in an effort to obtain the requested documents without court action. The efforts included a telephone call with counsel and the exchange of several emails, during which counsel for Mr. Steele specifically directed Wexford to the relevant case law. Those efforts were unsuccessful, thus necessitating the instant motion.

**CONCLUSION**

WHEREFORE, Plaintiff Ronald Steele respectfully requests that the Court enter an Order (i) compelling the production of documents responsive to Document Requests 54 and 55; (ii) awarding Plaintiff his reasonable expenses incurred in making this motion, including attorney's fees; and (iii) awarding Plaintiff any other such relief the Court deems just and equitable.

                                               Respectfully submitted,

Dated: May 16, 2019                    **RONALD STEELE**

Christopher D. Liguori
Amanda N. Catalano                    By:/s/ Amanda N. Catalano
Jacob B. Berger                          One of His Attorneys
TABET DIVITO & ROTHSTEIN LLC
209 S. LaSalle Street, 7th Floor
Chicago, IL 60604
Telephone: (312) 762-9450
Facsimile: (312) 762-9451
(cliguori@tdrlawfirm.com)
(acatalano@tdrlawfirm.com)
(jberger@tdrlawfirm.com)

*Attorneys for Plaintiff Ronald Steele*

## **CERTIFICATE OF SERVICE**

      Amanda N. Catalano, an attorney, hereby certifies that on May 16, 2019, she caused a true copy of the foregoing **Plaintiff's Motion to Compel the Production of Documents by Defendant Wexford Health Sources, Inc. and for Sanctions** to be filed with the Clerk of the Court for the United States District for the Northern District of Illinois using the CM/ECF system. Notice and a copy of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.

                                                                          /s/ Amanda N. Catalano